UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | Judge |
| vs. | ) | |
| | ) | |
| FUNDS IN THE AMOUNT OF $318,990 | ) | |
| IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant, *In Rem*. | ) | |

**VERIFIED COMPLAINT FOR FORFEITURE, *IN REM***

COMES NOW, before this honorable Court, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to the provisions of Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Fed. R. Civ. P. Supp.") G(2), respectfully, to bring this Verified Complaint for Forfeiture *In Rem*.

Plaintiff hereby alleges as follows:

**Nature of the Action**

1.   This is a civil action brought to forfeit property seized by the United States government for violations of federal law that provide for the seizure, forfeiture, and disposal of certain property to the United States.

2.   This action is an *in rem* legal proceeding against property, not against an individual, to determine rights in the property that are conclusive against the entire world.

3.   This civil action *in rem* is brought to forfeit property pursuant to the provisions of 21 U.S.C. § 881(a)(6), 18 U.S.C. §§ 981(a)(1)(A), and 981(a)(1)(C), because it: (1) was involved in,

(2) was used or intended to be used to facilitate, (3) was furnished or intended to be furnished in exchange for, or (4) is proceeds (or property) traceable to, a "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7)(A).

4. Based upon the facts and circumstances herein set forth, Plaintiff prays: (1) that process issue for an arrest warrant *in rem* for the subject property; (2) that notice be given to all parties to appear and show cause why forfeiture should not be decreed; (3) that this Court enter a judgment of forfeiture to the United States; and (4) that this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

5. This complaint is verified by the attached Verification of Drug Enforcement Administration ("DEA") Task Force Officer Eddy Sobkowiak ("TFO Sobkowiak"), which is fully incorporated herein.

### The Defendant *In Rem*

6. The Defendant *in rem* consists of the following property:

- $318,990 (three-hundred eighteen thousand and nine hundred ninety dollars) in United States currency.

(Hereinafter, the "subject property").

7. The subject property was seized on December 18, 2018, by the DEA Group 24 Task Force ("Group 24") operating out of Amtrak® Union Station in Chicago, Illinois ("Union Station"), to which TFO Sobkowiak is assigned.

8. The subject property is currently in the custody of the United States Marshals Service.

2

**Jurisdictional Statement**

9.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 because this

action is commenced by the United States of America, and pursuant to 28 U.S.C. § 1355(a)

because this is an action for forfeiture.

10. This Court has *in rem* jurisdiction over the subject property pursuant to 28 U.S.C. §

1355(b)(1)(A) because acts or omissions giving rise to forfeiture occurred in this district, and

pursuant to 28 U.S.C. § 1395(a) (via 28 U.S.C. § 1355(b)(1)(B)) because the subject property is

located in this district.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or

omissions giving rise to forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395 (via

28 U.S.C. § 1355(b)(1)(B)) because the subject property is located in this district.

**Basis for Forfeiture**

12. The subject property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it:

(1) was "furnished or intended to be furnished" in exchange for a controlled substance or listed

chemical in violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act

of 1970, 21 U.S.C. §§ 801, *et seq*. (the "Controlled Substances Act"), (2) represents "proceeds

traceable" thereto, or (3) was "used or intended to be used to facilitate" a violation thereof. *See*

21 U.S.C. § 881(a)(6).

13. The subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because

it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction

in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, "dealing in a controlled substance"

under 18 U.S.C. § 1961(1)(A) and "interstate and foreign travel or transportation in aid of

racketeering enterprises" under 18 U.S.C. § 1952 – "specified unlawful activit[ies]" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

14. The subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from "proceeds traceable" to "dealing in a controlled substance" under 18 U.S.C. § 1961(1)(A) and "interstate and foreign travel or transportation in aid of racketeering enterprises" under 18 U.S.C. § 1952 – "specified unlawful activit[ies]" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

## Summary of Facts

15. On December 18, 2018, members of DEA Group 24 conducted a consensual interview and search at Chicago Union Station, which led to the discovery and seizure of the subject property from Hadxian A. Matthews ("Matthews"), a passenger traveling via Amtrak® from Newark, New Jersey to Sacramento, California.

16. A police canine certified by the State of Illinois, the North American Police Work Dog Association ("NAPWDA") and Vapor Wake K9, demonstrated a positive alert on the subject property, indicating the presence of one of five odors he is trained to detect.

17. Based upon the experience of DEA Group 24 officers, including TFO Sobkowiak, and the totality of the circumstances further described below, the subject property was seized for forfeiture.

## Facts

I.  Union Station Interdiction and Discovery of the Subject Property

    A.  Overview of DEA Group 24 at Union Station

18.  This Complaint describes an investigation conducted by members of DEA Group 24 at Union Station, to which TFO Sobkowiak is a member.

4

19.   The primary responsibility of Group 24 is to investigate crimes involving the use of public train stations, commercial airlines, and shipping companies to transport illegal drugs and drug proceeds.

20.   Based upon the experience of Group 24 investigators and in similar investigations across the United States, it is common knowledge that cities in the mid-west and east coast are demand locations for illicit drugs.

21.   The state of California is considered a source location due to its close proximity to the border of Mexico and established drug transportation routes.

22.   Person(s) involved in the illegal drug trade, often hire couriers to transport drugs and or proceeds from the sale of drugs by utilizing public train stations, commercial airlines, and shipping companies.

23.   In an effort to identify and disrupt potential drug and/or money couriers related to drug organizations and criminal syndicates, investigators utilize a variety of resources, including confidential informants, suspicious travel itineraries, other law enforcement agencies, and prior knowledge of criminal activity or intelligence.

24.   Factors that constitute suspicious travel itineraries include ticket purchase at the counter immediately prior to departure or short notice reservations for one-way travel, sometimes paid in cash.

25.   In addition, Group 24 investigators know that it is common for couriers to utilize a third-party credit card to purchase tickets and to provide inaccurate or not in-service telephone numbers to airline and other transit companies.

26.   Couriers often travel with minimal luggage and routinely attempt to board at the last possible moment.

5

27. Drug and/or money couriers utilize these techniques in an attempt to conceal their identities from law enforcement and minimize their exposure to commercial airlines and passenger railroad services.

B. Matthews' Travel Itinerary

28. On December 18, 2018, law enforcement officers assigned to Group 24 were alerted to the suspicious travel itinerary of Matthews.

29. Matthews was traveling from Newark, New Jersey to Sacramento, California via Chicago Union Station on Amtrak® Train # 141/29/5. Matthews' ticket was purchased on December 16, 2018 with a departure date of December 18, 2018 for $1,637.00.

30. Matthews was assigned to Amtrak Train #5, Car #533, and Room #C.

31. Group 24 investigators sought to conduct a consensual interview of Matthews prior to him boarding Amtrak® Train #5.

32. In an attempt to assist in locating Matthews, members of Group 24 were supplied with a photograph of Matthews obtained through open internet resources.

C. Interview with Matthews

33. At approximately 1:45 p.m., TFO's Sobkowiak, Arnold Martinez, and Ken O'Brien arrived at Amtrak Train #5, Car #533. The TFO's were dressed in casual civilian attire, with no weapons, radios, or other police markings visible.

34. TFO's Sobkowiak, Martinez, and O'Brien went to room #C and found the door to be closed, locked, and the curtains drawn. TFO Sobkowiak knocked on the door of Room #C and an individual opened the door. TFO Sobkowiak noted the individual appeared to be Matthews based on the photo provided to Group 24 members. At that time, a consensual interview was initiated.

35.   TFO Sobkowiak identified himself to Matthews by displaying government issued DEA credentials and badge and asked to speak with Matthews. TFO Sobkowiak advised Matthews that he was not under arrest, and not in any kind of trouble. Matthews agreed to speak with agents.

36.   TFO Sobkowiak asked if he could see a photo identification to which Matthews produced a New Jersey State License bearing his name and likeness. TFO Sobkowiak looked at the license to verify Matthews' identity and immediately returned the license to Matthews.

37.   TFO Sobkowiak then asked Matthews if he could see his Amtrak boarding pass. Matthews showed TFO Sobkowiak his boarding pass. TFO Sobkowiak looked at the boarding pass and handed it back to Matthews.

38.   TFO Sobkowiak asked Matthews if the purpose of his trip was for business or pleasure. Matthews stated that it was for business as he was going to a conference for a few days.

39.   TFO Sobkowiak asked Matthews if he had any other luggage other than the rolling suitcase, rolling duffel bag, and backpack he had in his possession. Matthews stated the he just had the luggage that was with him in the room. TFO Sobkowiak asked Matthews if he packed his own luggage, knew all of the items in his luggage, and if all the contents on his person and in his luggage were his.   Matthews replied yes to all three questions.

40.   TFO Sobkowiak asked Matthews if anyone had given him anything to put in his luggage or on his person to take to Sacramento for them. Matthews stated no. TFO Sobkowiak asked Matthews if he was traveling with any electronic devices other than his cell phone. Matthews replied only one cell phone and a laptop. TFO Sobkowiak asked Matthews if he was traveling with any prescription medications. Matthews stated no. TFO Sobkowiak asked Matthews if he had any weapons on him or his luggage. Matthews stated no. TFO Sobkowiak asked Matthews if

he had any illegal drugs on him or in his luggage. Matthews snickered and stated no. TFO Sobkowiak asked Matthews if he had any large amounts of United States Currency ("USC") or other financial instruments on his person or in his luggage. TFO Sobkowiak then asked for consent to search his luggage for any of the items they discussed. Matthews gave verbal consent to search his luggage.

### D. Discovery of Subject Property

41.   TFO Sobkowiak asked Matthews if he would pass his rolling suitcase and rolling duffel bag out in the hall so TFO's Martinez and O'Brien could conduct the search. Matthews opened his backpack and began to show TFO Sobkowiak its contents. TFO Sobkowiak asked Matthews again to pass the suitcase and duffel bag out to the hall. This time Matthews handed TFO Sobkowiak the suitcase and duffel bag. TFO Sobkowiak noted that each piece was heavy as he handed them to TFO's Martinez and O'Brien.

42.   TFO Martinez searched the rolling duffel bag and found it contained a large vacuum-sealed bag in the contained clothing. TFO Martinez noticed the bag was sealed and compressed very tight and he could see the rectangular objects within the clothing.

43.   TFO O'Brien searched the suitcase and found it to contain the same type of vacuum-sealed bag contained in the clothing. TFO O'Brien also noted that there were rectangular objects concealed within the clothing in the bag. TFO O'Brien also noted the odor of marijuana when he opened the suitcase.

44.   Based on TFO's Martinez and O'Brien's experience, they believed the vacuum-sealed bags contained USC. TFO Sobkowiak asked Matthews if the bags contained USC. Matthews would not answer the question initially and then stated yes. TFO Sobkowiak asked Matthews why he did not mention the USC when asked earlier. TFO Sobkowiak advised Matthews the

question was specific, "any large amounts of USC". Matthews stated he was trying to understand what the process was but did not answer the question.

45.   TFO Sobkowiak told Matthews that it appeared to be a very large amount of USC and asked Matthews how he came to possess the USC. Matthews stated he earned the USC from being employed as an accountant. TFO Sobkowiak asked Matthews if he had any documentation on how he came to possess the USC. Matthews stated he did not. TFO Sobkowiak advised Matthews that the USC was going to be detained pending a K-9 sniff. TFO Sobkowiak asked Matthews if he voluntarily would like to exit the train and obtain a receipt for the detained currency. Matthews stated he wanted a receipt and would come with the TFO's.

46.   While walking to the South Boarding Lounge to meet with Amtrak K-9 Officer, TFO Sobkowiak asked Matthews how long he had been an accountant. Matthews stated 5 years. TFO Sobkowiak asked Matthews how much money he earned yearly. Matthews stated $80,000. TFO Sobkowiak asked Matthews if he filed an income tax return last year and if so how much income he claimed. Matthews stated he filed taxes and claimed $50,000 in income. Matthews then stated he respectfully declined to answer any more questions.

E.   Canine Examination of Matthews' Luggage at Union Station

47.   Amtrak® Canine Officer Robert Crowley ("Officer Crowley") and his canine partner "Gander," along with TFO's Sobkowiak, Martinez, and O'Brien, arrived at Chicago Union Station's South Boarding Lounge.

48.   Gander is currently five years old and Officer Crowley is Gander's second handler.

49.   Gander is certified by the State of Illinois (most recently on August 30, 2018), the NAPWDA (most recently on April 4, 2018), and Vapor Wake K9 (most recently on April 6, 2018).

50. Gander was last certified prior to this investigation by the State of Illinois on November 29, 2017.

51. Gander is trained and certified to detect five odors: (1) marijuana, (2) cocaine, (3) heroin, (4) ecstasy, and (5) methamphetamine.

52. If at any time during a search Gander smells one of the five odors he is trained to detect, Gander will alert with a passive alert at the area where he smells the odor.

53. Once in the South Boarding Lounge, TFO's Martinez and O'Brien placed the duffel bag and suitcase in different areas of the lounge. Officer Crowley and K-9 Gander conducted an open air scent investigation on each piece. K-9 Gander gave a positive alert on the suitcase then continued working and gave a positive alert on the duffel bag.

54. TFO Sobkowiak advised Matthews that K-9 Gander gave a positive alert to the presence of narcotics odors on both the suitcase and duffel bag. Matthews stated that he smokes marijuana and believed that was why there was a positive alert.

F.  Seizure of the Subject Property for Forfeiture

55. TFO Sobkowiak advised Matthews the subject property was going to be seized pending further investigation. Matthews accompanied agents to DEA/Amtrak office to obtain his receipt.

56. While in the Amtrak/DEA office, TFO's Martinez and O'Brien removed the USC from the duffel bag and suitcase. The USC was contained within 5 pillow cases in the vacuum sealed bags. TFO Sobkowiak again asked Matthews how much currency was in the bags. Matthews stated he respectfully declined to answer the question.

57. TFO Sobkowiak asked Matthews for his social security number and Matthews respectfully declined to provide the information.

58. TFO Sobkowiak sealed the subject property according to DEA policy as witnessed by TFO's Martinez and Matthews.

59. Matthews was then given a DEA-12 (receipt) and Matthews signed an address acknowledgment form. Matthews was escorted to Amtrak customer service where he arranged to continue his travel.

II.   Administrative Forfeiture Proceedings

60.   On February 13, 2019, DEA initiated administrative forfeiture proceedings against the subject property by mailing a Notice Letter and Notice of Seizure to all potential interest holders via certified mail.

61. In response to this notice, Matthews submitted an online claim to DEA dated March 4, 2019.

62. On March 11, 2019, DEA referred this matter to the United States Attorney's Office for the Northern District of Illinois to initiate judicial forfeiture proceedings.

**First Cause of Action**

63. Plaintiff repeats and realleges the averments in paragraphs one through 62 as though fully set forth herein.

64. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it: (1) was "furnished or intended to be furnished" in exchange for a controlled substance or listed chemical in violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq*. (the "Controlled Substances Act"), (2) represents "proceeds traceable" thereto, or (3) was "used or intended to be used to facilitate" a violation thereof. *See* 21 U.S.C. § 881(a)(6).

65. Pursuant to 21 U.S.C. § 881(a)(6), "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of [21 U.S.C. §§ 801-904], all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [thereof]" are subject to forfeiture to the United States. *Id*.

### Second Cause of Action

66. Plaintiff repeats and realleges the averments in paragraphs one through 62 as though fully set forth herein.

67. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, "dealing in a controlled substance" a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

68. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of 1956, 1957 or 1960 of [Title 18], or any property traceable to such property," is subject to forfeiture to the United States.

69. Pursuant to 18 U.S.C. § 1956(a)(3):

> Whoever, with the intent—
>  (A) to promote the carrying on of specified unlawful activity;
>  (B) to conceal or disguise the nature, location, source, ownership, or control of
>      property believed to be the proceeds of specified unlawful activity; or
>  (C) to avoid a transaction reporting requirement under State or Federal law,
> conducts or attempts to conduct a financial transaction involving property
> represented to be the proceeds of specified unlawful activity, or property used to
> conduct or facilitate specified unlawful activity, shall be fined under this title or
> imprisoned for not more than 20 years, or both…

70.    The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

71.    The list of offenses under § 1961(1)(A) are further defined as "racketeering activity," and include "any act or threat involving . . . dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year[.]" *See* 18 U.S.C. § 1961(1)(A).

**Third Cause of Action**

72.    Plaintiff repeats and realleges the averments in paragraphs one through 62 as though fully set forth herein.

73.    For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, interstate and foreign travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952, a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

74.    Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of 1956, 1957 or 1960 of [Title 18], or any property traceable to such property," is subject to forfeiture to the United States.

75.    Pursuant to 18 U.S.C. § 1956(a)(3):

> Whoever, with the intent—
>  (A) to promote the carrying on of specified unlawful activity;
>  (B) to conceal or disguise the nature, location, source, ownership, or control of
>       property believed to be the proceeds of specified unlawful activity; or
>  (C) to avoid a transaction reporting requirement under State or Federal law,

13

conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both.

76.    The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

77.    The list of offenses under § 1961(1)(A) are further defined as "racketeering activity," and include "any act which is indictable under . . . section 1952[.]" *See* 18 U.S.C. § 1961(1)(A).

78.    Section 1952(a) describes the following as an indictable act:

Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
(1) distribute the proceeds of any unlawful activity; or
(2) commit any crime of violence to further any unlawful activity; or
(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity[.]

79.    Section 1952(b) further describes "unlawful activity" as, "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)[.]". *See* 18 U.S.C. § 1952(b).

### Fourth Cause of Action

80.    Plaintiff repeats and realleges the averments in paragraphs one through 62 as though fully set forth herein.

81.    For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to "dealing in a controlled substance," a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

82.    Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified

14

unlawful activity' (as defined in section 1956(c))" is subject to forfeiture to the United States. *See* 18 U.S.C. § 981(a)(1)(C)(2018).

83.    The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

84.    The list of offenses under section 1961(1)(A) are further defined as "racketeering activity," and include "any act or threat involving . . . dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year[.]" *See* 18 U.S.C. § 1961(1)(A).

**Fifth Cause of Action**

85.     Plaintiff repeats and realleges the averments in paragraphs one through 62 as though fully set forth herein.

86.    For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952 ([i]nterstate and foreign travel or transportation in aid of racketeering enterprises), a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

87.    Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c))" is subject to forfeiture to the United States. *See* 18 U.S.C. § 981(a)(1)(C)(2018).

88.    The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

89.    The list of offenses under section 1961(1)(A) are further defined as "racketeering activity," and include "any act which is indictable under . . . section 1952[.]" *See* 18 U.S.C. § 1961(1)(A).

90.    Section 1952(a) describes the following as an indictable act:

Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
   (1) distribute the proceeds of any unlawful activity; or
   (2) commit any crime of violence to further any unlawful activity; or
   (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity[.]

91.    Section 1952(b) further describes "unlawful activity" as, "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)[.]" *See* 18 U.S.C. § 1952(b).

## Prayer for Relief

WHEREFORE, based upon the aforementioned facts and circumstances, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. Supp. G(3)(b), respectfully, prays:

1)    That process issue for an arrest warrant *in rem* for the subject property, which Plaintiff will execute in accordance with 28 U.S.C. § 1355(d) and Fed. R. Civ. P. Supp. G(3)(c);

2)    That due notice be given to all parties to appear and show cause why forfeiture of the subject property to the United States in accordance with the claims herein set forth should not be decreed;

3)    That this Court enter a judgment of forfeiture for the subject property to the United States; and

16

4)  That this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

DATED this 31ˢᵗ day of May 2019.

JOHN R. LAUSCH, JR.
United States Attorney
For the Northern District of Illinois

By:    *Jeffrey R. Borup*
       —————————————
       JEFFREY R. BORUP
       Assistant United States Attorney
       219 South Dearborn Street, 5th Floor
       Chicago, Illinois 60604
       Desk: (312) 697-4087
       Email: jeffrey.borup@usdoj.gov

Attorneys for Plaintiff
United States of America

17

State of Illinois        )
                        ) ss.

County of Cook       )
_____)

## VERIFICATION OF DEA TASK FORCE OFFICER EDDY SOBKOWIAK IN SUPPORT OF COMPLAINT FOR FORFEITURE *IN REM*

I, Eddy Sobkowiak, declare under penalty of perjury the following:

1.  I am a Task Force Officer for the United States Drug Enforcement Administration ("DEA") since November 1998 where I am assigned to the Chicago Union Station, Group 24.

2.  I am also a Sergeant with the McCook Police Department and have been so employed for approximately 27 years.

3.  My duties and responsibilities as a Task Force Agent with DEA involve investigation of alleged violations of the Controlled Substances Act, Title 21 of the United States Code.

4.  I have read the foregoing complaint in this matter and the facts alleged are true and correct to the best of my knowledge and belief.

5.  This statement is based upon my own personal knowledge as well as information I have received from other agents, persons, and documents; it does not include each and every fact known to me concerning this investigation, but is submitted for the limited purpose of establishing a basis to believe the property identified is subject to forfeiture.

Executed this 31st day of May 2019, in Chicago, Illinois.


EDDY SOBKOWIAK
Task Force Officer
Drug Enforcement Administration